Opinion issued August 30, 2007



In The

*Court of Appeals*

For The

*First District of Texas*

_____

NO. 01-05-00516-CR
_____

FRABON CROCKER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1012896

DISSENTING OPINION

This appeal presents an interesting question that appears to be of first

impression in Texas regarding the preservation of error in criminal cases. The usual

method for preserving error is to press for an adverse ruling from the trial court by first objecting, then requesting an instruction for the jury to disregard, and finally asking for a mistrial. But what is the effect of defense counsel's requesting a motion for mistrial before obtaining a ruling on his request for an instruction to disregard? In other words, when the trial court denies the motion for mistrial, does that also constitute a denial of the request for an instruction to disregard? The majority holds that the single denial serves to deny both requests, but I disagree. The difference that it makes is whether our review is focused on the trial court's error in denying an instruction to disregard and a motion for mistrial, rather than on whether an instruction to disregard could have cured the error. Importantly, the majority does not hold that the argument here constituted incurable error; it holds that the trial court erred in denying appellant's requests for an instruction to disregard *and* a mistrial. In a case in which defense counsel proceeded directly to a request for a mistrial, the Court of Criminal Appeals held that, although the adverse ruling on the request for mistrial was sufficient to preserve error, even though no objection or request for an instruction to disregard had been made, the focus of the analysis was on whether an instruction to disregard could have cured the error. *See Young v. State,* 137 S.W.3d 65, 71 (Tex. Crim. App. 2004). The Court of Criminal Appeals held that an instruction to disregard would have cured any harm. *Id.* at 72.

Here is the state of the record that we are called upon to review. In closing arguments, the following exchange occurred:

[Prosecutor]: And I will tell you this: The State and the defense have the same ability to bring in witnesses in this case. The State can subpoena witnesses. The defense can subpoena witnesses. Okay. You heard from the State's witnesses as to who was there January 26, 2004. And the State's witnesses only. And I ask that you find him guilty.

[Defense Counsel]: Objection improper jury argument.

[Trial Court]: Sustained.

[Defense Counsel]: I'd ask the jury be instructed to disregard the last statement of the prosecutor. We ask for mistrial.

[Trial Court]: Denied.

Notice that defense counsel asked for an instruction to disregard, but proceeded to ask for a mistrial before the trial court had ruled on the request for an instruction to disregard.

Because the burden is on an appellant to produce a record that demonstrates error and preservation of that error, I would place the burden on defense counsel to have waited to receive a ruling on his request for an instruction to disregard before going on to ask for a mistrial. I submit that it would be a rare case in which a trial court, having sustained an objection, would deny a request for an instruction to disregard. Having received only one ruling, defense counsel should have either clarified on the record that it was a ruling on both requests, or asked the trial court to go back and separately to rule on the request for an instruction to disregard.

3

Admittedly, I have found no case that so holds. The closest case that I could find is *Young v. State, supra,* in which the court held that a denial of a mistrial, in the absence of an objection and a request for an instruction to disregard, requires a review of whether an instruction to disregard would have cured any harm.

If we are not going to place the burden on an appellant in this situation, we are placing the burden on trial courts to sort out multiple requests to be sure that each is separately ruled on. I heartily disagree with such a practice.

I do agree with the majority that appellant was entitled to an instruction to disregard. My disagreement is that I believe that an instruction to disregard would have cured any harm for five reasons:

1.      The comment on appellant's failure to testify appears to be an errant attempt to comment on appellant's failure to call witnesses, which is ordinarily a proper argument. As the majority states, there is nothing in the record indicating that the prosecutor had evil intent in making his argument. The problem is that the only obvious witness was appellant. Thus, the comment became a comment on appellant's failure to testify. The comment was not direct, however, such as, "Many of you may have expected appellant to testify, and I cannot tell you why he did not." The majority agrees that the comment here is an indirect comment. An indirect comment is obviously less prejudicial than a direct comment, and there was no mention in appellant's general objection that the prosecutor was commenting on appellant's

failure to testify, as there is in some cases. At the out-start, therefore, we are faced with a lesser degree of harm than many comments on the failure of the accused to testify.

2. As the majority points out, the jury had been instructed during jury selection by both the trial court and defense counsel that jurors could not hold appellant's failure to testify against him. In the process, it was made very clear that the burden was on the State, and the defense had no burden at all, not even to ask questions, much less to present witnesses, including appellant. Although a few venirepersons had some difficulty with the concept, all jurors agreed to place the burden on the State and not to hold it against appellant for failing to testify or to bring witnesses. Thus, no venireperson had to be struck for cause for being unable to follow the trial court's instructions in this area. As the majority also points out, the jury was again instructed in the trial court's charge not to hold appellant's failure to testify against him. The law is as set out in the majority opinion: the jury is presumed to follow the instructions of the trial court. Therefore, to the extent that the jurors may have identified the impropriety in the State's argument as a comment on appellant's failure to testify, they would have considered the prosecutor's action as improper, particularly in light of the trial court's having sustained appellant's objection. Therefore, the likelihood is that jurors would have held this argument against the State, rather than against appellant.

3. Defense counsel made many objections during trial, the majority of which were sustained. Accordingly, the jury was used to seeing the prosecutor's actions objected to by the defense and the trial court's sustaining the defense's objections. Once again, this reinforces the proposition that if the error here produced any prejudice, it was more likely directed against the prosecutor than against appellant.

4. The prosecutor's argument initially focused on the complainant's having recorded the license plate number of the red van in which his assailant had fled and in which appellant was arrested as the sole occupant and driver a few months later. This was in rebuttal of defense argument dwelling on the lack of physical evidence, sloppy police work, and tainted identification procedures. The prosecutor argued that the van was one big piece of physical evidence. The prosecutor also focused on the identification by the complainant who had observed appellant as he was surprised literally with his hand in the till and fled from the store and again as the complainant hung onto the van's mirror in a futile attempt to stop the van. It was during the prosecutor's argument regarding the identification that he drew the only other objection during argument; it was one of the few defense objections that was overruled during trial. Thus, the jury had the benefit of seeing where the prosecutor was arguing properly, as opposed to where he was arguing improperly.

5. Although defense counsel attempted to portray this case as one of mistaken identity, the complainant's having written down the license plate number of appellant's fleeing red van, which was stopped a few months later with appellant driving, constituted objective, corroborating evidence so as to assure that the jury's verdict was based on the evidence presented, rather than on the prosecutor's errant comment on appellant's failure to call witnesses, which, because of the circumstances of this case, constituted an indirect comment on appellant's failure to testify.

Accordingly, I respectfully dissent from the implicit holding of the majority that appellant either obtained a ruling on his request for an instruction to disregard or that appellant was relieved of the responsibility of obtaining such a ruling under the unusual preservation posture of this case caused by defense counsel's failure to obtain a ruling on his request for an instruction to disregard before asking for a mistrial. A mistrial is an extreme remedy not to be granted until all lesser remedies have been exhausted to no avail. Moreover, it is very helpful to the appellate court for it to be able to consider an instruction to disregard in gauging its efficacy in neutralizing any harm so as to be able to evaluate the propriety of a trial court's denial of a mistrial. When a trial court is presented with a request for a mistrial before having ruled on a request for an instruction to disregard, I believe that the trial court is entitled to deem the request for an instruction to disregard to have been abandoned, *i.e.*, to consider that counsel's position has quickly shifted to believing that no

7

instruction could cure the harm—so that, should the trial court be of the opinion that an instruction would cure the harm, the trial court could properly overrule the motion for mistrial. *See Young*, 137 S.W.3d at 72 (holding that because an instruction to disregard venireperson's comments would have cured any resulting harm, trial court did not err in denying appellant's motion for mistrial).


Tim Taft
Justice

Panel consists of Justices Taft, Alcala, and Hanks.

Justice Taft, dissenting.

En banc consideration was requested. *See* TEX. R. APP. P. 41.2(c).

A majority of the Justices of the Court voted to deny en banc consideration. *See id.*

Justices Taft, Nuchia, and Higley dissent from the denial of en banc consideration for the reasons stated in the dissenting opinion. *See* TEX. R. APP. P. 47.5.

Publish. TEX. R. APP. P. 47.2(b).